679 So.2d 278 (1996)
Charles KUKRAL and Milly Kukral, Petitioners,
v.
George D. MEKRAS, M.D.; Miami Urology Institute, Inc., and Dr. John T. McDonald Foundation d/b/a Doctors' Hospital, Respondents.
No. 85099.
Supreme Court of Florida.
June 13, 1996.
Rehearing Denied September 4, 1996.
*279 Joe N. Unger of the Law Offices of Joe N. Unger, P.A., Miami; and the Law Offices of Richard L. Katz, Coral Gables, for Petitioners.
Bambi G. Blum of Hicks, Anderson & Blum, P.A., Miami; George, Hartz, Lundeen, Flagg & Fulmer, P.A., Coral Gables; and Gail Leverett Parenti of Parenti, Falk, Waas & Frazier, Coral Gables, for Respondents.
ANSTEAD, Justice.
We have for review Kukral v. Mekras, 647 So.2d 849 (Fla. 3d DCA 1994), which expressly and directly conflicts with the opinion in Stebilla v. Mussallem, 595 So.2d 136 (Fla. 5th DCA), review denied, 604 So.2d 487 (Fla. 1992). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We quash Kukral and approve Stebilla. For the reasons expressed below, we hold that the trial court erred in dismissing plaintiffs' medical malpractice claim for their alleged failure to comply with the presuit investigation requirements of section 766.203(2), Florida Statutes (1991).

FACTS
The essential facts are set out in the district court opinion:
On February 21, 1992, the plaintiffs served on Doctor's Hospital and Dr. George D. Mekras notices of intent to initiate litigation for medical malpractice. The notices stated that during a medical procedure to remove genital warts undiluted acid was applied to the plaintiff's penis resulting in serious burns. These notices of intent were not accompanied by a verified written medical expert opinion when they were mailed. Miami Urology Institute, Inc. [MUI], Dr. Mekras' employer, alleges that it was not individually served with a notice of intent and that the notice sent to Dr. Mekras did not indicate that MUI was a prospective defendant.
Doctor's Hospital sent a denial of the claim to the plaintiffs accompanied by an affidavit of an expert. On August 14, 1992, the plaintiffs sent out an unverified medical expert opinion corroborating the claim of medical negligence. On September 3, 1992, the plaintiffs sent out a verification of medical expert opinion alleging negligence. Then, on October 9, 1992, the plaintiffs filed their complaint against Doctor's Hospital, Dr. Mekras, and MUI [collectively referred to as defendants] for medical malpractice. After the matter had been set for trial, the defendants filed a motion to determine whether the plaintiffs had properly complied with the statutory pre-suit screening procedures. After hearings, the trial court entered the appealed order dismissing the plaintiffs' case for failure to comply with the mandatory pre-suit screening procedures.
Kukral, 647 So.2d at 850. The effect of the order of dismissal was to permanently bar the plaintiffs' claim since the statutory limitations period for filing claims had then expired.[1]
The Third District affirmed the order of dismissal by a two-to-one vote, and reasoned as follows:
It is the plaintiffs failure to comply with their duty to conduct an investigation as defined by section 766.202(4), Florida Statutes (1991), that distinguishes this case from the cases relied on by plaintiffs. In Stebilla v. Mussallem, 595 So.2d 136 (Fla. 5th DCA), rev. denied, 604 So.2d 487 (Fla. 1992) and Ragoonanan v. Assocs. in Obstetrics & Gynecology, 619 So.2d 482 (Fla. 2d DCA 1993), and in Suarez v. St. Joseph's Hosp., Inc., 634 So.2d 217 (Fla. 2d DCA 1994), the plaintiffs obtained the necessary medical opinion before filing their notices.
Under section 766.206, Florida Statutes (1991), since no reasonable investigation was conducted, the plaintiffs' claim was properly dismissed.
647 So.2d at 850-51. Judge Jorgenson dissented and reasoned:
The Florida Supreme Court has emphasized that "when possible the presuit notice and screening statute should be construed *280 in a manner that favors access to the courts." Patry v. Capps, 633 So.2d 9, 13 (Fla.1994); see also Weinstock v. Groth, 629 So.2d 835, 838 (Fla.1993) ("[R]estrictions on access to the courts must be construed in a manner that favors access.") (citations omitted). This is particularly so when, as here, defendants have not been prejudiced by plaintiff's actions. Patry, 633 So.2d at 13.
Plaintiff provided a written corroborating medical expert opinion within the period of the statute of limitations, and then verified that opinion within the limitations period; he complied with the presuit notice requirements and should not be subject to the ultimate sanctiondismissal of his claim. See Suarez v. St. Joseph's Hosp., 634 So.2d 217 (Fla. 2d DCA March 23, 1994) (failure to verify medical opinion "not fatal if compliance is secured prior to the expiration of the appropriate statute of limitations."); Stein v. Feingold, 629 So.2d 998 (Fla. 3d DCA 1993) (affidavit of expert witness timely filed when filed within statute of limitations period). The judicial gloss that the majority applies to section 766.202(4) controls only when the plaintiff has failed to satisfy the presuit requirements prior to the end of the limitations period. It is then, and only then, that the malpractice complaint may be dismissed for failure to comply with the statute.
Id. at 851-52. On rehearing en banc, the district court, by a vote of six to four, adopted the majority's opinion as the opinion of the en banc court. Id. at 852-53.

LAW and ANALYSIS
Chapter 766, Florida Statutes (1995), sets out a complex presuit investigation procedure that both the claimant and defendant must follow before a medical negligence claim may be brought in court. In Williams v. Campagnulo, 588 So.2d 982 (Fla.1991), we upheld the constitutionality of the notice requirement of section 768.57(2), Florida Statutes (1985), which is currently found at section 766.106(2), Florida Statutes (1995), and noted: "The statute was intended to address a legitimate legislative policy decision relating to medical malpractice and established a process intended to promote the settlement of meritorious claims at an early stage without the necessity of a full adversarial proceeding." Williams, 588 So.2d at 983.
The first step in this statutory scheme requires a claimant to determine whether reasonable grounds exist to believe that someone acted negligently in the claimant's care or treatment and that this negligence caused the claimant's injury. Section 766.104(1) provides that no medical negligence action shall be filed "unless the attorney filing the action has made a reasonable investigation as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant." It also provides that "good faith" may be shown if the claimant or his counsel has received a written opinion of an expert "that there appears to be evidence of medical negligence." Section 766.104(2) provides for a ninety-day extension of the statute of limitations "to allow the reasonable investigation required by subsection (1)."
Section 766.201(2)(a)1. also provides that a reasonable investigation should precede the filing of malpractice claims and defenses "in order to eliminate frivolous claims and defenses." Section 766.202(4) defines "investigation" to mean "that an attorney has reviewed the case against each and every potential defendant and has consulted with a medical expert and has obtained a written opinion from said expert." After completing the presuit investigation pursuant to section 766.203 and prior to filing a claim for medical malpractice, the claimant must notify each prospective defendant "of intent to initiate litigation for medical malpractice." Id. § 766.106(2). Section 766.203(2) requires that the claim be corroborated by a "verified written medical expert opinion" which must be furnished to the defendant.
Upon receipt of the notice of intent, the defendant has ninety days to conduct its own presuit investigation. Id. § 766.203(3). During this ninety-day period the claimant may not file suit. Id. § 766.106(3)(a). Before the defendant may deny the claimant's reasonable grounds for finding medical negligence, the defendant must provide the claimant with *281 a verified written medical expert opinion corroborating a lack of reasonable grounds to show a negligent injury. Id. § 766.203(3)(b).
Sections 766.106(5)-(9) and 766.204-.205 provide for informal presuit discovery after a notice of intent is issued, and require each party to provide the other with "reasonable access to information within its possession or control in order to facilitate evaluation of the claim." § 766.205(1), Fla.Stat. (1995). The unreasonable failure of any party to comply with informal discovery may justify dismissal of that party's claims or defenses. Id. § 766.106(3)(a).
After completion of presuit investigation and any informal discovery, and even before the actual filing of a medical negligence claim, "any party may file a motion in the circuit court requesting the court to determine whether the opposing party's claim or denial rests on a reasonable basis." Id. § 766.206(1).[2] If the court finds the claimant's notice of intent to initiate litigation is not in compliance with the reasonable investigation requirements of sections 766.201-.212, the court may dismiss the claim or impose other sanctions, including costs and attorney's fees. Id. § 766.206(2). Section 766.206(3) is a similar provision addressing the defendant's non-compliance with the statute, and providing for appropriate sanctions such as the striking of the defendant's "response" and the assessment of costs and fees.

Stebilla
In Stebilla v. Mussallem, 595 So.2d 136 (Fla. 5th DCA 1992), the Fifth District reversed a trial court's dismissal of a medical malpractice action and held that the plaintiffs' failure to provide a corroborating medical expert opinion at the time the notice of intent to sue was filed was not a jurisdictional defect. Id. at 138. In Stebilla the defendants refused to engage in presuit discovery on the grounds that the presuit notice was invalid because a corroborating medical opinion was not provided at the same time. In reversing the order of dismissal, the court discussed the purposes underlying the presuit investigation requirements:

*282 There are disparate purposes underlying the requirement of serving a notice of intent to sue and the requirement of providing a verified written medical expert opinion corroborating reasonable grounds to support a claim of medical negligence. The purpose of a notice of intent to sue is to give the defendant notice of the incident in order to allow investigation of the matter and promote presuit settlement of the claim. The expert corroborative opinion, on the other hand, is designed to prevent the filing of baseless litigation. As stated by the appellants in their brief:
The expert opinion to be supplied is not one which delineates how the defendants were negligent. Section 766.104 refers to a written medical opinion "that there appears to be evidence of medical negligence." Section 766.203(2) provides that the medical expert opinion is for "corroboration of reasonable grounds to initiate medical negligence litigation." And § 766.205(1) specifically provides that the medical opinion need only corroborate that "there exists reasonable grounds for a claim of negligent injury." Obviously, the corroborative medical opinion adds nothing to the Plaintiffs' notice of their claim. It merely assures the Defendants, and the court, that a medical expert has determined that there is justification for the Plaintiffs' claim, i.e., that it is not a frivolous medical malpractice claim. The purpose of the medical expert opinion is to corroborate that the claim is legitimate, not to give notice of it.
In [Hospital Corp. of America v.] Lindberg [571 So.2d 446 (Fla.1990)], the Florida Supreme Court was faced with essentially the same question which confronts us here: Is a medical malpractice plaintiff's failure to comply with the presuit screening process provided by Chapter 766 within the applicable statute of limitations fatal, as a matter of law, to the plaintiff's cause of action? The supreme court held in Lindberg that the answer to that question is no. It held that the plaintiff could proceed so long as the notice of intent and the complaint were filed within the statutory period.
In that case, the plaintiffs had failed to allege compliance with presuit notice investigation requirements, and the defendants contended that upon expiration of the statute of limitations, the trial court was without subject matter jurisdiction to allow amendment of the complaint to include allegations of compliance with the statutory requirements. The supreme court disagreed with that conclusion, and held that where a complaint and presuit notice are simultaneously filed and served within the applicable statute of limitations, the plaintiff may subsequently (even after expiration of the statutory period) file an amended complaint asserting compliance with the presuit screening process.
Id. at 139 (first emphasis added). Similarly, in Gargano v. Costarella, 618 So.2d 786 (Fla. 5th DCA 1993), the same court held that the failure to provide a corroborating expert opinion with the notice of intent does not justify dismissal of a claim if the corroborating opinion is filed before the expiration of the statutory limitations period.
Unlike the decisions in Stebilla and Gargano, the decision below held that the plaintiffs' initial failure to strictly comply with the presuit requirements of the statute prior to filing their notice of intent to sue was fatal to their claim, regardless of any subsequent compliance with the statute's requirements prior to the expiration of the limitations period.[3] This holding is inconsistent with our prior construction of the statutory scheme.
*283 As noted in Stebilla, this Court has held that the failure to comply with the presuit requirements of the statute is not necessarily fatal to a plaintiff's claim so long as compliance is accomplished within the two-year limitations period provided for filing suit. 595 So.2d at 139. In Williams v. Campagnulo, 588 So.2d 982 (Fla.1991), we upheld the dismissal of an action wherein no notice of intent was filed "within the statute of limitations period." Id. at 983. We also stated:
We made it clear in Ingersoll [v. Hoffman, 589 So.2d 223 (Fla.1991)] and in Lindberg that compliance with the prefiling notice requirement of section 768.57 was a condition precedent to maintaining an action for malpractice and, although it may be complied with after the filing of the complaint, the notice must be given within the statute of limitations period.
Id. In Hospital Corp. v. Lindberg, 571 So.2d 446 (Fla.1990), we held that a notice of intent was timely so long as it was filed within the statutory limitations period. We also cited with approval the statement in Malunney v. Pearlstein, 539 So.2d 493, 496 (Fla. 2d DCA), review denied, 547 So.2d 1210 (Fla.1989), that the presuit screening requirements were not intended "to oust a plaintiff from the ability to pursue a new or subsequent action for the alleged malpractice," after failing initially to timely comply with the notice requirements. Id. at 449. In Ingersoll v. Hoffman, 589 So.2d 223 (Fla.1991), we set aside the dismissal of a claim on the basis of waiver and reaffirmed our holding in Lindberg:
The certified question was partially answered by this Court's recent decision in Hospital Corp. of America v. Lindberg, 571 So.2d 446 (Fla.1990), in which we held that the failure to follow the presuit notice and screening requirements of section 768.57 and the presuit investigation and certification requirements of section 768.495(1) is not jurisdictional.
Id. at 224.
This same rule has been applied to other defaults under the presuit requirements of the statute, such as the furnishing of a verified corroborating medical affidavit. See Shands Teaching Hosp. v. Miller, 642 So.2d 48 (Fla. 1st DCA 1994)[4] (holding that medical *284 malpractice claimant is required to submit corroborating medical expert opinion in support of claim prior to expiration of statute of limitations), dismissed, 657 So.2d 1163 (Fla.1995); Miami Physical Therapy Assoc., Inc. v. Savage, 632 So.2d 114 (Fla. 3d DCA 1994) (applying Williams and holding that notice required by section 766.106 must be filed within statute of limitations); Stein v. Feingold, 629 So.2d 998 (Fla. 3d DCA 1993) (applying Stebilla and Lindberg and holding that affidavit of expert witness is timely filed when filed within statutory limitations period); see also Suarez v. St. Joseph's Hosp., Inc., 634 So.2d 217 (Fla. 2d DCA 1994) (holding failure to verify medical opinion at time notice of intent to initiate litigation and complaint were filed is not fatal if compliance is secured prior to expiration of statute of limitations).[5] We think the same reasoning should apply here.
There is no dispute here that all of the parties engaged in pretrial discovery and had a full and fair opportunity to investigate this claim prior to the initiation of suit and well within the statutory limitations period. The record reflects without dispute that by the time the parties had completed their presuit discovery, and more than a month before suit was filed, the defendants had been provided a fully verified corroborating expert opinion in support of the claim.[6] This expert opinion, along with the other circumstances of the claim, mooted any issue as to the existence of a reasonable basis for the claim.[7] All of this was done not only in advance of suit, but while almost a year remained for filing suit within the statutory limitations period. By the time presuit discovery was concluded, all requirements of the statute had been met and any potential prejudice to the defendants of having to defend against a frivolous suit had been eliminated. Accordingly, just as we have held that other presuit requirements of the statute could be met within the limitations period, we see no basis for concluding otherwise here.
This decision is also consistent with our prior holdings favoring access to the courts, while still carrying out the legislative policy of requiring the parties to engage in meaningful presuit investigation, discovery and negotiations. We agree with the proposition that the medical malpractice statutory scheme must be interpreted liberally so as not to unduly restrict a Florida citizen's constitutionally guaranteed access to the courts, while at the same time carrying out the legislative policy of screening out frivolous lawsuits and defenses. In Weinstock v. Groth, 629 So.2d 835 (Fla.1993), we stated that "[T]he purpose of the chapter 766 presuit requirements is to alleviate the high cost of medical negligence claims through early determination and prompt resolution of claims, not to deny access to the courts to plaintiffs...." Id. at 838; see also Patry v. Capps, 633 So.2d 9, 11, 13 (Fla.1994); Ragoonanan v. Associates in Obstetrics & Gynecology, 619 So.2d 482, 484 (Fla. 2d DCA 1993) (asserting that sections 766.201 through 766.212 "were not intended to require presuit litigation of all the issues in medical negligence claims nor to deny parties access to the court on the basis of technicalities"); George A. Morris III, M.D., P.A. v. Ergos, 532 So.2d 1360 (Fla. 2d DCA 1988) (striking a defendant doctor's defenses for failure to timely respond to presuit discovery requests held too harsh a remedy in absence of prejudice to plaintiff).
Under the trial court's strict application of the statute here, a claimant who prematurely *285 filed a notice of intent and later secured a corroborating medical affidavit would be forever barred from court no matter how much time remained for filing suit, or how soon after serving notice the expert corroboration was secured. Such a claimant would be in an even worse position than a claimant who filed no notice at all but is allowed to correct this deficiency within the limitations period. This result is at odds with our interpretation of the statute's requirements as well as the need to balance those requirements with a party's right to go to court.

Dismissal of Claim Against MUI
Respondent Miami Urology Institute (MUI) also contends that the trial court properly dismissed plaintiffs' cause against defendant MUI on independent grounds for plaintiffs' failing to serve a separate notice of intent to initiate litigation upon MUI.
Petitioners counter by arguing that because, under rule 1.650(b)(1), Florida Rules of Civil Procedure, MUI bears a legal relationship to a prospective defendant who received a notice (Dr. Mekras), a separate notice to MUI was not necessary. Alternatively, even if a separate notice was required, petitioners allege that, under Ingersoll, MUI is estopped since this issue was not raised as an affirmative defense in a responsive pleading.[8]
Rule 1.650(b), Florida Rules of Civil Procedure, provides, in pertinent part:
(1) Notice of intent to initiate litigation sent by certified mail to and received by any prospective defendant shall operate as notice to the person and any other prospective defendant who bears a legal relationship to the prospective defendant receiving the notice. The notice shall make the recipient a party to the proceeding under this rule.
(2) The notice shall include the names and addresses of all other parties and shall be sent to each party.
(Emphasis added.) Since MUI bears a legal relationship to Dr. Mekras (i.e., it was his employer), notice to Dr. Mekras operated as notice to MUI. Paragraph (2) does not vitiate this interpretation. It requires, inter alia, the claimant to include the names and addresses of persons who are already parties to the action (i.e., those who have already been sent notices) in the new notice. This way a new defendant will know who has been previously joined as a defendant in the action. We therefore agree with petitioners that MUI is not entitled to a dismissal on this separate ground.

CONCLUSION
We quash the decision in Kukral v. Mekras, 647 So.2d 849 (Fla. 3d DCA 1994), and approve Stebilla v. Mussallem, 595 So.2d 136 (Fla. 5th DCA 1992), to the extent it liberally construes the presuit screening requirements found in chapter 766. We hold that plaintiffs' compliance with the presuit investigation requirements of chapter 766 prior to filing suit and within the statutory limitations period constituted sufficient compliance with the presuit notice and investigation requirements of the statute. The case is remanded for proceedings consistent with this opinion.
It is so ordered.
KOGAN, C.J., and SHAW, GRIMES, HARDING and WELLS, JJ., concur.
OVERTON, J., dissents.
NOTES
[1] The record reflects that the defendants' motion to dismiss, which was filed early in the litigation on the same grounds, was denied. There is no explanation in the record as to why the trial court reconsidered this ruling other than the fact that the subsequent motion was restyled.
[2] In full, section 766.206, Florida Statutes (1995), provides:

(1) After the completion of presuit investigation by the parties pursuant to s. 766.203 and any informal discovery pursuant to s. 766.106, any party may file a motion in the circuit court requesting the court to determine whether the opposing party's claim or denial rests on a reasonable basis.
(2) If the court finds that the notice of intent to initiate litigation mailed by the claimant is not in compliance with the reasonable investigation requirements of ss. 766.201-766.212, the court shall dismiss the claim, and the person who mailed such notice of intent, whether the claimant or the claimant's attorney, shall be personally liable for all attorney's fees and costs incurred during the investigation and evaluation of the claim, including the reasonable attorney's fees and costs of the defendant or the defendant's insurer.
(3) If the court finds that the response mailed by a defendant rejecting the claim is not in compliance with the reasonable investigation requirements, the court shall strike the defendant's response, and the person who mailed such response, whether the defendant, the defendant's insurer, or the defendant's attorney, shall be personally liable for all attorney's fees and costs incurred during the investigation and evaluation of the claim, including the reasonable attorney's fees and costs of the claimant.
(Emphasis added.) These provisions for sanctions focus on the presuit period during "the investigation and evaluation of the claim" and apparently contemplate the imposition of sanctions for the expense and effort that one party may have unnecessarily caused the other to incur during that presuit period. The defendants failed to seek costs and attorneys fees in the circuit court as provided by section 766.206(2) prior to the time suit was filed. In fact, the parties even agreed to extend the presuit investigative period. Defendants were apparently not seeking sanctions for unnecessary costs and attorneys' fees incurred during the presuit period, but rather were seeking dismissal for plaintiffs' failure to strictly comply with all of the technical requirements of the statute. Unlike the defendants in Stebilla, 595 So.2d at 137, who elected not to engage in pretrial discovery because of the perceived failure of the claimants to timely comply with the statutory scheme, the defendants here joined in discovery with the claimants. As a result, both sides eventually received everything they were entitled to before any suit was filed, and well within the limitations period. Instead of going to court before suit was filed, as the statute seems to contemplate, and claiming that they had been put through unnecessary expense on a frivolous claim, the defendants demanded and eventually received all that they were entitled to under the statute.
[3] The following exchange took place at the hearing in the trial court:

THE COURT: Well, let me say that it's very nice but it doesn't cure the problem. The problem that Mr. Katz is raising is that he doesn't know what you're attacking.
Would you be good enough to tell him now, in open court, so he has a record and he can prepare for the hearing? Tell him whywhat you feel is insufficient and asit's your affirmative defense and it's your obligation to set out in what respects your affirmative defense is avoiding his case, or hishis claim.
MR. GRAHAM: The basis of it is this, your Honor: Notice of intent was filed with Martha Satterfield (phonetic), risk manager of Doctors' Hospital, on a date purported to be February 21, 1992. It was received on February 26, 1992. The notice of intent to initiate litigation filed on that date does not contain an affidavit of a doctor which is required by Florida Statute 766.206 paren, I think, four.
THE COURT: And 209. You said 766.206? Oh, I'm sorry. Maybe
MR. GRAHAM: 766.206, I believe, is the statute.
THE COURT: I apologize for intruding.
MR. GRAHAM: Yes.
THE COURT: All right. Now, does that help you in any way to get prepared for this next hearing, Mr. Katz? They said that you didn't send an affidavit.
MR. KATZ: Yes, itIs that the extent of what you're alleging?
MR. GRAHAM: Yes.
Then, subsequently, we notified you, on May 5th, May 19th, 1992, that you had not properly complied with the presuit screening. That was a letter from Glenn Falk to you.
On June 19th, 1992, it was specified that you had not complied with the statute because you didn't give us a written medical expert opinion as required by 766.203(2)(b), and 766.203(4).
On September 3rd, 1992, you provided the expert affidavit but you did not send it certified mail and you did not send it to Doctors' Hospital.
On August 14th, 1992, again, you sent the affidavit, the various individuals, but it was not mailed to Doctors' Hospital. That's the substance of our
THE COURT: Okay. Now, you want the court reporter to have this typed up for you, Mr. Katz, so you'll know what it is or do you have knowledge of what he's talking about?
. . . .
MR. GRAHAM: And 76-766.106 specifies it has to be sent certified mail.
THE COURT: Yes.
Well, we can only find out later if something didn't go certified mail.
Does the law say if you can show actual notice certified mail then can be waived?
MR. GRAHAM: The case law specifically saysI've got a brand new case from the Second District
THE COURT: Good.
MR. GRAHAM: that says even hand delivering the notice to the doctor does not meet the requirements and the case was dismissed and it was affirmed on appeal.
THE COURT: Wow, that's very interesting.
MR. GRAHAM: It's very technicalthe technical requirements of the statute.
Record on Appeal, vol. II at 359-62.
[4] The district court opinion in Shands noted the possible conflict with the Third District's holding herein by citing: "But see Kukral v. Mekras." Id. at 48.
[5] See also Patry v. Capps, 633 So.2d 9 (Fla.1994) (holding physician's acknowledged receipt of timely written notice of intent to initiate medical malpractice action that results in no prejudice to physician is sufficient notice under section 766.106(2), Florida Statutes, even though plaintiff served notice by hand rather than certified mail as required by statute).
[6] In fact, unverified letters from the claimants' medical expert were provided even earlier.
[7] The claimants also contend that the nature of the claim, the application of undiluted acid to a sensitive body part, independently furnishes a reasonable basis for the claim. Because we have decided this case on other grounds, we need not decide whether the apparent nature of the claim of negligence was sufficient to demonstrate that petitioners had conducted a sufficient and "reasonable" investigation prior to sending their notice to respondents. See Marrero v. Goldsmith, 486 So.2d 530 (Fla.1986); Atkins v. Humes, 110 So.2d 663 (Fla.1959); Montgomery v. Stary, 84 So.2d 34 (Fla.1955).
[8] See Ingersoll v. Hoffman, 589 So.2d 223 (Fla. 1991) (holding dentist's failure to timely raise issue of patients' failure to provide statutory prelitigation notice of medical malpractice action constituted waiver of issue; had respondent timely raised issue, petitioners could have attempted to comply with statute before expiration of limitations period).