**Bill Gene CLARK, and Nancy Patricia Clark, Plaintiffs,**

v.

**SARASOTA COUNTY PUBLIC HOSPITAL BOARD, d/b/a Sarasota Memorial Hospital, et al., Defendants.**

**No. 97–1805–CIV–T–25A.**

United States District Court, M.D. Florida, Tampa Division.

June 26, 1998.

Order Denying Reconsideration: Aug. 31, 1998.

William J. McHenry, Fieger, Fieger & Schwartz, P.C., Southfield, MI, for Bill Gene Clark, Nancy Patricia Clark.

John V. Cannon, III, Carol A. Kalish, Williams, Parker, Harrison, Dietz & Getzen, Sarasota, FL, for Sarasota County Public Hospital Board.

Ralph L. Marchbank, Jr., Dickinson, Gibbons, Shields, Partridge, Dahlgren & Collins, PA, Sarasota, FL, William Eddins Partridge, Douglas Boozer Lumpkin, Mark A. Haskins, Lutz, Webb & Bobo, P.A., Sarasota, FL, for Steven S. Morse, M.D.

## ORDER

PIZZO, United States Magistrate Judge.

THIS CAUSE is before the Court on the Defendants' motions to dismiss and for alternative relief (docs. 3, 5, 6, and 12) and the Plaintiffs' responses thereto. For the reasons explained below, the Defendants' motions are granted, and the complaint is dismissed in part with prejudice and in part without prejudice.[1]

### I. Background

This is a medical malpractice suit before the district court on diversity of citizenship grounds. The Plaintiffs are husband and wife and reside in Michigan. In July 1995, Plaintiffs were vacationing in Florida. Mr. Clark became ill and was taken to the emergency room at Sarasota Memorial Hospital where he was diagnosed with ap-

1. The parties to this action have consented to proceed before Magistrate Judge Mark A. Pizzo pursuant to 28 U.S.C. § 636.

pendicitis. Defendant Drs. Thompson and Brock performed an emergency appendectomy on Mr. Clark. Subsequently, Mr. Clark suffered postoperative complications including abdominal abscesses. In attempting to treat the abscesses, Mr. Clark alleges that Defendant Dr. Morse perforated his bowel and then failed to promptly diagnose the tear. Mr. Clark alleges that all of his treating physicians and the hospital acted negligently with respect to his medical care and that their negligence was the proximate and legal cause of his injuries. Mrs. Clark has asserted a claim (Count II) for loss of consortium arising from Mr. Clark's alleged injuries.

Each Defendant has now moved the Court to dismiss the Clarks' complaint with prejudice. The Defendants argue that such a dismissal is warranted because the Plaintiffs have failed to comply with Chapter 766, Florida Statutes, which sets forth highly detailed pretrial screening and investigation procedures for medical negligence cases. Any attempt to comply which Chapter 766 at this time, Defendants argue, would be futile as the two year statute of limitations applicable to this case has run. The Sarasota County Hospital Board has also moved to dismiss the case based on the Plaintiffs' failure to comply with the presuit notice and pleading requirements of § 768.28, Florida Statutes, which provides for a limited waiver of sovereign immunity for divisions of state government.

## II. Discussion

### A. The Physician Defendants' Motions to Dismiss

■ As summarized above, the physician Defendants have moved to dismiss the Plaintiffs' complaint based on their failure to comply with the presuit investigation requirements of Chapter 766, Florida Statutes. Chapter 766 sets out a complex, but detailed and specific, presuit investigation procedure that both a claimant and a de-

fendant must satisfy before a medical negligence claim can be brought in court. *Kukral v. Mekras,* 679 So.2d 278 (Fla. 1996). "The statute was intended to address a legitimate legislative policy decision relating to medical malpractice and established a process intended to promote the settlement of meritorious claims at an early stage without the necessity of a full adversarial proceeding." *Id.* More specifically, the pretrial investigation process is designed to force claimants and potential defendants to carefully analyze the merits of a particular claim from both a legal and medical perspective before settlement is rejected and suit is filed.

■ An in depth discussion of the presuit investigation process is not necessary here. In addition to being clearly set forth in the Florida Statutes, the presuit investigation process is thoroughly outlined in the Florida Supreme Court's *Kukral* opinion. If a court finds that a claimant has not complied with presuit procedures prior to filing his complaint, § 766.206(2), Florida Statutes directs the court to dismiss the action. The presuit investigation requirements are not jurisdictional but rather are conditions precedent to the bringing of a medical malpractice action. *Kukral,* 679 So.2d at 283. Nevertheless, where a plaintiff fails to comply with a certain aspect of presuit procedure and the default cannot be remedied before the statute of limitations runs, the court's dismissal should be with prejudice. *See, e.g., Correa v. Robertson,* 693 So.2d 619 (Fla. 2d DCA 1997); *Royle v. Florida Hospital–East Orlando,* 679 So.2d 1209 (Fla. 5th DCA 1996).

■ In this case, the Defendant physicians argue that the Plaintiffs failed to comply with two critical requirements of Chapter 766 relating to the verified written medical expert opinion which a claimant must provide in conjunction with serving his notice of intent to sue pursuant to § 766.203(2), Florida Statutes.[2] Specifical-

---

2. After the conclusion of the statutorily mandated presuit investigation, § 766.106, Florida Statutes requires a claimant to provide

each defendant he intends to sue with a notice of his intent to initiate litigation for medical malpractice. Pursuant to § 766.203(2),

ly, the doctors argue that (1) neither of the two written opinions provided to the them by the Plaintiffs contains information sufficient to establish that the persons rendering the opinions possess the credentials necessary to qualify them as a medical expert as defined in § 766.202(5), Florida Statutes;[3] and (2) neither of the written opinions contain any information regarding whether any previous opinion by the same "expert" has been disqualified in another legal proceeding, as specifically required by § 766.203(4). Florida Statutes.[4] The doctors are correct, and the Court finds that the neither the written opinion of Dr. Schwartz or Dr. Semel, which are attached to the physicians' various motions, contains any statements evidencing that Drs. Schwartz and Semel are "medical experts" as defined by the statute. Furthermore, the verified medical opinions also lack information regarding whether any of the affiants have been rejected as experts in prior legal proceedings. The question now is whether these omissions are fatal to the Plaintiffs' claims.

The Court concludes that two omissions discussed above do in fact render the Plaintiffs' written medical opinions, and consequently the Plaintiffs' notice of intent to sue, legally insufficient. To conclude otherwise would negate the express language and belie the clear intent of Chapter 766. With respect to the Plaintiffs' failure to include some assurance in Drs. Schwartz's and Semel's affidavits that they are "medical experts," § 766.203(2), Florida Statutes specifically requires that a claimant's notice of intent to sue be cor-

roborated by a written opinion from a "medical expert." As discussed above, who qualifies as a medical expert for presuit purposes is explicitly defined by the Chapter 766. To not require some basic statement in the written opinion regarding the qualifications of the "expert" would defeat the requirement because there is no other opportunity, prior to filing suit, to test the expertise of the person giving the opinion.[5]

As explained above, the presuit investigation procedures applicable to medical negligence case are intended to guarantee that parties have assessed the technical and legal merits of their claims and defenses prior to initiating litigation. The written expert medical opinion plays an important function in accomplishing this goal in that it assures the "Defendants, and the court, that a medical expert has determined that there is justification for the Plaintiffs' claim, *i.e.*, that it is not a frivolous medical malpractice claim." *Stebilla v. Mussallem*, 595 So.2d 136, 139 (Fla. 5th DCA 1992). In other words, the expert opinion is intended to bolster the medical conclusions of the attorney which are set forth in the notice of intent to sue, thereby assisting the recipient of the opinion in assessing the potential liability arising from the claim. Without some representation in the written medical expert opinion that the person rendering the opinion is a "medical expert," the intent of the statute is eviscerated because the recipient of the opinion has no idea how much stock to place in the corroborating opinion, and

---

the claimant must also provide a corroborating verified written expert medical opinion at the time the notice of intent to sue is mailed. The opinion must be from a "medical expert."

3. A medical expert is defined is in Chapter 766 as "a person duly and regularly engaged in the practice of his profession who holds a health care professional degree from a university or college and has had special professional training and experience or one possessed of a special health care knowledge or skill about the subject upon which he is called to testify or provide an opinion." § 766.202(5), Fla. Stat.

4. Section 766.203, Florida Statutes provides that "the medical expert opinions required by this section shall specify whether any previous opinion by the same medical expert has been disqualified and if so the name of the court and the case number in which the ruling was issued."

5. The presuit discovery process permitted by §§ 766.106(7) and 766.205, Florida Statutes do not allow for the taking of the deposition or statements of the parties' presuit medical experts.

consequently, the claims summarized in the notice of intent to sue.

As for the Plaintiffs' failure to include information in Drs. Schwartz's and Semel's affidavits regarding whether a court has ever disqualified them as experts, that omission flies in the face of the express language of § 766.203(4), Florida Statutes which clearly requires such a statement. And, like the omission discussed in the preceding paragraph, it disserves the purpose of requiring the corroborating medical opinion by denying the Defendants the ability to accurately assess the true expertise of the person giving the opinion and, consequently, to properly analyze the threat posed by the Plaintiffs' claims. In sum, since the Plaintiffs have failed to comply with the presuit requirements of §§ 766.106 and 766.203, Florida Statutes, their complaint must be dismissed pursuant to § 766.206(2).

The Plaintiffs urge that they should be permitted to comply with Chapter 766 and allowed to file an amended complaint. This is impermissible because the statute of limitations has run on the Plaintiffs' claims. The statute of limitations for medical negligence claims is two years under Florida law. § 95.11, Florida Statutes. According to the Plaintiffs, their claims arose no later than July 28, 1995. As such, the statute of limitations ran on approximately October 28, 1998.[6] The Plaintiffs' made no attempt, however, to cure the defects alleged by the physician defendants prior to that date despite the fact that the Defendants served their motions to dismiss on the Plaintiffs prior to the

6. Section 766.106(4), Florida Statutes provides for an automatic 90 tolling of the two-year statute of limitations upon the claimant serving its notice intent to sue upon the Defendants.

7. In addition to the Defendants filing their motions to dismiss prior to the statute of limitations running, Defendant Dr. Thompson's insurance carrier informed the Plaintiffs' attorney on January 28, 1997 that the Plaintiffs' notice of intent to sue was not properly corroborated with a qualified expert medical opinion. (See Exhibit C to Dr.

statute running.[7] Although compliance with the Chapter 766 is not jurisdictional, any defaults under the statute must be cured prior to the running of the statute of limitations or the subject complaint should be dismissed with prejudice. *Correa, supra; Royle,* 679 So.2d at 1212. Accordingly, the Plaintiffs' claims against Mr. Clark's treating physicians should be dismissed with prejudice.

**B. Sarasota County Hospital Board's Motion to Dismiss**

The Sarasota County Hospital Board (the "Board") is correct that Plaintiffs have failed to comply with § 768.28(6) by failing to present their claim to the Florida Department of Insurance (the "Department"). Providing the Department with notice of the claim is a condition precedent to maintaining a cause of action against a subdivision of state government. § 768.28(6)(b), Florida Statutes; *Commercial Carrier Corp. v. Indian River County,* 371 So.2d 1010 (Fla.1979); *Wright v. Polk County Public Health Unit,* 601 So.2d 1318 (Fla. 2d DCA 1992). Since the claim must be presented to the Department within three years of accruing, however, the Plaintiffs still have time to correct this defect. § 768.28(6)(a), Florida Statutes. *See Public Health Trust of Dade County v. Knuck,* 495 So.2d 834, 837 (Fla. 3rd DCA 1986). As such, any dismissal on this ground should be without prejudice. *Wright,* 601 So.2d at 1319.

**III. *Conclusion***

Accordingly, it is hereby **ORDERED** that:

> Thompson's motion to dismiss (doc. 7)). This correspondence should have made Plaintiffs' attorney particularly sensitive to the presuit requirements of Chapter 766 well in advance of the statute of limitations running. *See Correa v. Robertson,* 693 So.2d 619 (Fla. 2d DCA 1997) (defendants notified plaintiff before suit was filed and long before the statute of limitations ran that the affidavit did not comply with the statutory presuit requirements, and court dismissed plaintiff's complaint with prejudice, holding that it was "human failure, not the presuit requirements which barred [plaintiff's] entry to the courthouse").

1. The physician Defendants' motions to dismiss (docs. 5, 6, and 12) are **GRANTED, with prejudice;**

2. The clerk of the court is directed to enter a final judgment in favor of the physician Defendants as consistent with this Order;

3. The Board's motion to dismiss (doc. 3) is **GRANTED without prejudice.**

4. The clerk is directed to close the file.

DONE AND ORDERED.

### ORDER

THIS CAUSE is before the Court on the Plaintiffs' Motion for Reconsideration/Rehearing (doc. 33) and the Defendants' responses thereto.

 Plaintiffs' motion (doc. 33), in pertinent part, asked this court to reconsider and set aside its final Order and Judgment (docs. 30, 31) dismissing Plaintiffs' claims. In support of their motion, Plaintiffs assert that there is a direct conflict between the requirements of the Florida Medical Malpractice Statute and the Federal Rules of Civil Procedure. Specifically, the Plaintiffs argue that the heightened pleading requirement in Fla.Stat. § 766.203, requiring an affidavit from a medical expert as part of a plaintiff's complaint directly conflicts with Fed.R.Civ.P. 8(a) which requires only a short and plain statement of the plaintiff's claim.[1] Predictably, Defendants have filed responses to Plaintiffs' motions, asserting that Plaintiffs have failed to make the requisite showing necessary for reconsideration by this Court. Further, Defendants assert that Florida's Medical Malpractice Statutes are substantive in nature, and that this Court's dismissal of Plaintiffs' claims was correct since the Plaintiffs failed to comply with the Medical Malpractice Statutes.

 There are limited circumstances in which a motion for reconsideration is appropriate. There must be (1) an intervening change in the controlling law; (2) new evidence which has become available; or (3) a need to correct clear error or prevent manifest injustice. *Sussman v. Salem, Saxon & Nielsen, P.A.,* 153 F.R.D. 689 (M.D.Fla.1994); *see also ABB Power T & D Company, Inc. v. Gothaer Versicherungsbank VVAG,* 939 F.Supp. 1568 (S.D.Fla.1996); *Harsco Corp. v. Zlotnicki,* 779 F.2d 906 (3d Cir.1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). Plaintiffs have failed to allege any of the above-described circumstances justifying reconsideration of this Court's order. In any event, in considering Defendants' motions to dismiss and in issuing the final Order and Judgment (docs.30, 31) dismissing Plaintiffs' claims, this Court examined the cases *Woods v. Holy Cross Hospital,* 591 F.2d 1164 (5th Cir.1979) and *Brown v. Nichols,* 8 F.3d 770 (11th Cir. 1993) and found them instructive.

In *Woods,* the former Fifth Circuit dismissed the plaintiff's medical malpractice claims against the defendant, and held that Florida's medical malpractice presuit mediation requirement must be enforced by federal district courts in diversity cases.[2] Guided by "the policies underlying the Erie rule," the *Woods* court determined that "we would do grave damage to the legislative response evidenced by Florida's Medical Malpractice Law if we refused to apply the mediation requirement in diversity cases." *Id.* at 1168–69. Further, the *Woods* court stated that:

> "In our view the result of our holding is essential, as otherwise the principles of Erie and its offspring would be violated

---

**1.** Notably, Plaintiffs are making this argument for the first time. A motion for reconsideration is not an opportunity for a party to improve upon his or her arguments or to try out new ones. *McCoy v. Macon Water Authority,* 966 F.Supp. 1209, 1223 (M.D.Ga.1997). This fact alone is reason for denying the motion.

**2.** The Eleventh Circuit in an en banc decision, *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

non-resident plaintiffs would be encouraged to forum shop in the federal courts, and justice would be inequitably applied between resident and nonresident malpractice claimants."

*Id.* at 1170. *See also* 73 *Notre Dame Law Review* 891, 905 (May 1998) (explaining that "nothing in the federal Constitution, statutes, or rules compels the federal court to refuse to employ the [medical malpractice presuit] screening process—the best case for the claim that Rule 8 does so is quite weak—and by employing the state procedure in diversity-based cases, the federal court contributes to the realization of the Erie ideal: namely, a federal judiciary that gives the states the respect that under the Constitution they deserve").

As in *Woods,* the Plaintiffs in the instant action failed to comply with Florida's presuit malpractice statutes. Although Florida's presuit malpractice requirements have changed significantly over time, the *Woods* courts' rationale is particularly applicable to this action which once again involves the Plaintiffs' failure to comply with state malpractice presuit requirements. Similar to the former Fifth Circuit's finding in *Woods,* this Court finds that refusing to apply the medical malpractice presuit requirements to out-of-state plaintiffs in a diversity action in federal court would not serve the legislative purpose underlying the statutory presuit requirements.

This Court finds the *Brown* case inapplicable in that the Eleventh Circuit relied upon a Georgia statute and Georgia Supreme Court opinions that are not applicable or binding in this Florida case. In determining that the plaintiff's claims of medical malpractice should not be dismissed with prejudice, the *Brown* court relied upon two Georgia Supreme Court opinions that dismissal of the plaintiffs' complaint is inappropriate when it is not clear at the time the action is filed that the professional malpractice statute applies. *Brown,* 8 F.3d at 774. The Florida Supreme Court, on the other hand, has not reached such a holding. Instead, Florida courts have determined that failure to abide with the presuit requirements re-

quires dismissal, and that failure to comply with the presuit requirements prior to the expiration of the statute of limitations period requires dismissal with prejudice. *See Williams v. Campagnulo,* 588 So.2d 982 (Fla.1991); *Correa v. Robertson,* 693 So.2d 619 (Fla. 2d DCA 1997); *Royle v. Florida Hospital–East Orlando,* 679 So.2d 1209 (Fla. 5th DCA 1996).

Accordingly, it is hereby **ORDERED** that:

1. Plaintiffs' Motion for Reconsideration/Rehearing is **DENIED;**

4. The Clerk of Court is directed to close the file.